## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Digital River Marketing Solutions, Inc. d/b/a Direct Response Technologies, and Digital River, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Eric Porat and Affiliads LLC, <br><br> Defendants. | Case No.: 10-SL-2051 DWF/FLN <br><br> **COMPLAINT** |

Plaintiffs Digital River Marketing Solutions, Inc. d/b/a Direct Response Technologies ("DRT") and Digital River, Inc. ("Digital River") (DRT and Digital River are collectively referred to as "Plaintiffs" herein), for their Complaint against the above-named Defendants, Eric Porat and Affiliads, LLC, ("Affiliads"), state and allege as follows:

### INTRODUCTION

1.  In this lawsuit, Plaintiffs seek injunctive relief against Eric Porat and his company, Affiliads, LLC, for their intentional and unlawful conduct relating to their current attempts to sell stolen electronically-stored data derived from Digital River's servers in Minnesota.





## PARTIES

2. DRT is a Delaware corporation with its principal place of business at 730 Holiday Drive, Foster Plaza, Building 8, Pittsburgh, PA 15220. It is a wholly owned subsidiary of Digital River.

3. Digital River is a Delaware corporation with its principal place of business at 9625 West 76th Street, Eden Prairie, MN 55344. Digital River is an e-commerce company that, among other things, provides software delivery and data storage on the internet.

4. Upon information and belief, Eric Porat ("Porat") is a citizen of New York residing in Brooklyn, New York. As described in declarations filed in conjunction with Plaintiffs' motion for a temporary restraining order, Porat personally took part in and directed the wrongful conduct described herein.

5. Upon information and belief, Affiliads, LLC is a Limited Liability Company formed under the laws of the State of New York and located in Brooklyn, New York. Porat is the sole owner of Affiliads, LLC.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 18 U.S.C. § 1030. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Digital River's Minnesota state-law claims, because those claims are related to claims within the Court's original jurisdiction and form part of the same case or controversy. In addition, this Court has original jurisdiction under 28 U.S.C. §

1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

8. DRT provides internet services to its clients which allow the clients to store certain data on Digital River's servers. This data is valuable proprietary information that Plaintiffs store on Digital River's servers and protect with commercially reasonable security measures.

9. DRT offers a program and service known as DirectTrack. DirectTrack is used by DRT's customers to create and manage affiliate marketing programs.

10. "Affiliate marketing" is a marketing practice in which a business pays a commission to one or more affiliates for each visitor or customer brought to it by the affiliate's marketing efforts. In other words, affiliate marketing is similar to having commission-only sales agents who drive traffic to Internet offers and who get credit when people complete transactions such as a sale or an inquiry or lead. DirectTrack is a software program which enables its customers to create, manage, track, maintain, and otherwise derive value from the affiliate marketing programs they have established.

11. Because DirectTrack is web-based, each DirectTrack customer works with its own data, but that data is hosted on servers owned by Digital River. DirectTrack customers access their information by logging in to a protected computer via a secured website maintained specifically for the customers. Access to DirectTrack sites is password protected and subject to additional security protocols.

12. On January 27, 2010, there was an unauthorized downloading and collection of data from Digital River's servers located in Minnesota. The unauthorized person(s) downloaded DirectTrack data belonging to twelve DirectTrack customers, including customer lists that are not generally known or ascertainable, provide competitive advantages to each owner, gained at expense to the owners, and were maintained confidentially by the owners via DirectTrack (hereinafter "stolen data").

13. At the time, Plaintiffs were not aware of the data access.

14. The stolen data was later offered for sale to a DRT client (Media Breakaway, LLC) by Defendants.

15. Defendants requested a price of approximately $400,000.

16. Media Breakaway, LLC reported the matter to Plaintiffs and engaged Defendants in several email exchanges and phone conversations.

17. Using information gathered from Defendants by Media Breakaway, LLC, and investigating its own records, Plaintiffs determined that the stolen data offered for sale by Defendants was data associated with DirectTrack stored on Digital River's servers located in Minnesota.

18. The stolen data offered for sale by Defendants was not available to the public but available only to the customers with whom it was associated.

19. The stolen data offered for sale by Defendants was accessed without authorization and in manner outside the normal operating procedures for any of DRT's customers.

20.    Plaintiffs' business is data. Defendants have misappropriated this data, and attempted to sell this data to the detriment of Plaintiffs and DRT's clients. The heart of Plaintiffs' business, their business relationships, their contracts, and future contractual opportunities, are all at risk of irreparable harm so long as this data is wrongfully in Defendants' possession and for sale.

21.    Defendants aided, abetted and/or conspired with one or more persons presently unknown to commits the acts complained of herein. In email dated May 11, 2010, Porat claims to have obtained the data with the assistance of a "partner" and a "DT worker." Upon information and belief, "DT worker" likely refers to "DirectTrack worker" and is intended to refer to a person who worked, in some capacity, at Digital River's Eden Prairie, Minnesota facility.

## COUNT I
### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g))
### (Plaintiffs v. Defendants)

22.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

23.    On or about January 27, 2010, Defendants, their agents, and/or persons working with or for Defendants, intentionally accessed Digital River's protected computers without authorization.

24.    As a result of such conduct, Defendants recklessly caused damage.

25.    As a result of such conduct, Defendants caused damage and loss to Digital River.

26.    This aggregated loss exceeds $5,000 during a one-year period.

27. As a result of Defendants' unlawful conduct, Plaintiffs are entitled to preliminary and permanent injunctive relief.

## COUNT II
### (Minnesota Deceptive Trade Practices Under Minn. Stat. § 325D.44)
### (Plaintiffs v. Defendants)

28. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

29. Defendants' actions constitute willful and knowing deceptive trade practices, in violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

30. Plaintiffs and the consuming public have been, are, and will be, irreparably injured if Defendants' deceptive trade practices are allowed to continue.

31. As a result of Defendants' wrongful conduct, Plaintiffs are entitled to preliminary and permanent injunctive relief, damages in an amount to be determined at trial, and recovery of attorneys' fees and costs incurred.

## COUNT III
### (Conversion)
### (Digital River v. Defendants)

32. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

33. Defendants, their agents, and/or persons working with or for Defendants willfully interfered with the security of Digital River's servers when they unlawfully accessed and downloaded the stolen data.

34. The taking of the stolen data was done without lawful justification.

35. As a result of Defendants' (and/or their agents' and/or persons working with or for the Defendants') unlawful taking, Digital River has been deprived of use and possession of its property, including, without limitation, its servers.

## COUNT IV
### (Trespass to Chattels)
### (Digital River v. Defendants)

36. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

37. Defendants have intentionally dispossessed Digital River of the security of its servers through their unlawful taking of the stolen data.

## COUNT V
### (Aiding and Abetting Breach of Fiduciary Duty)
### (Plaintiffs v. Defendants)

38. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

39. Defendants' May 11, 2010 emails indicate that Defendants obtained Digital River's data with the assistance of a "DT worker."

40. Upon information and belief, this "DT worker" owed a fiduciary duty to Digital River.

41. Upon information and belief, the "DT worker" breached his or her fiduciary duty to Digital River through his or her unlawful taking of Digital River's data.

42. Defendants aided and abetted in this breach, as Defendants had actual knowledge of the breach.

43. Defendants knowingly induced or participated in the breach.

44. Plaintiffs have suffered damage as a result of the breach.

## COUNT VI
### (Unjust Enrichment)
### (Plaintiffs v. Defendants)

45. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

46. Defendants received a valuable benefit when they unlawfully obtained Digital River's electronically-stored data.

47. Defendants (and/or their agents and/or persons working with or for Defendants) knowingly took that benefit through their unauthorized access to Digital River's servers and unlawful downloading of the data.

48. It is inequitable for Defendants to remain in wrongful and unlawful possession of the data.

49. By the Defendants (and/or their agents and/or persons working with or for Defendants) unlawful taking of the data, and Defendants' unlawful retention of the data, Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court award the following relief:

1. A temporary restraining order and a preliminary injunction that contains the following:

   (1) Defendants are enjoined and restrained from:

   a. selling, offering to sell, transferring, attempting to transfer,

        downloading, importing, exporting, advertising, promoting, and/or distributing any data and/or other information obtained from Plaintiffs and/or Plaintiffs' clients/customers;

    b.    destroying, altering, changing, removing, or secreting any documents, including, but not limited to, email, computer data, invoices, purchase orders, receipts, banking records, safe deposit box records, investment records, shipping labels, or tax returns, including all records stored on computer discs or tapes within computer terminals or otherwise, which contain any information whatsoever concerning the business or finances of any of the Defendants, selling any data or information relating to Plaintiffs and/or Plaintiffs' customers/clients, and/or otherwise relate to any data and/or information relating to Plaintiffs and/or Plaintiffs' customers/clients; and

    c.    transferring, removing, encumbering or permitting the withdrawal of any assets or property, presently or formerly belonging to the defendants, jointly or severally, whether real or personal, tangible or intangible, including but not limited to cash, bank accounts of any kind, stock and bond accounts, and title to defendants' business property, except upon further order of this Court or written agreement of the parties.

(2)    Plaintiffs shall be permitted immediate access to Defendant Eric Porat's office and/or home for the purpose of making copies of any documents, including, but not limited to, electronically-stored data and email, present at said locations. Defendant Eric Porat shall provide Plaintiffs with any and all passwords to any and all computers which store information relating to 3(a)—(c) below.

(3)    Within two (2) days of the service of this Order upon Defendant Eric Porat, Defendants shall produce to Plaintiffs the following documents:

    a.    any and all documents obtained from Plaintiffs and/or Plaintiffs' customers in 2010;

    b.    any and all documents relating to the attempted and/or actual sale of data obtained from Plaintiffs or Plaintiffs' customers/clients; and

    c. any and all documents constituting or containing communications relating to the acquisition of data from Plaintiffs and/or Plaintiffs' clients/customers in 2010, including, but not limited to, email with Vexat iTech Pvt Ltd (commonly referred to as "VCommissions"), Integraclick, Inc. (commonly referred to as "Clickbooth"), and any consultant, agent, or employee of Plaintiffs and/or Plaintiffs' customers/clients.

(4) Within two (2) days of the service of this Order upon Defendant Eric Porat, Defendants shall reveal any and all persons who assisted them in acquiring the data offered for sale by them, or who gave them the data offered for sale by them; and any and all persons to whom Defendants sold or disclosed any portion of the data;

(5) Within fourteen (14) days of the service of this Order upon Defendant Eric Porat, Defendant Eric Porat shall make himself available for a deposition in New York City, New York not to exceed seven (7) hours.

(5) Defendants are under a continuing obligation to identify and report to Plaintiffs any data that they know have been obtained, or is in the process of being obtained (or attempting to be obtained), from Plaintiffs and/or Plaintiffs' customers/clients without authorization and/or authorization that has been exceeded.

(6) Further discovery in this matter shall be conducted pursuant to the times prescribed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Minnesota. The discovery granted hereunder may be accompanied by subpoenas issued pursuant to Fed. R. Civ. P. 45.

2. Award Digital River its costs of suit; and

3. Award Digital River such other and further relief the Court deems just and proper.

DATED: May 13, 2010

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____
Christopher W. Madel (MN No. 230297)
Bruce D. Manning (MN No. 0312289)
Courtney E. Thompson (MN No. 0390284)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFFS**

**Digital River Marketing Solutions, Inc. d/b/a Direct Response Technologies and Digital River, Inc.**

81468709.4